UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ROGER EDWARDS,

        Plaintiff,

    v.                                         Case No. 21-cv-1288-bhl

JENNIFER MCDERMOTT and
JULIE LUDWIG,

        Defendants.

---

## SCREENING ORDER

---

Plaintiff Roger Edwards, who is currently serving a state prison sentence at the Waupun Correctional Institution and representing himself, filed a complaint in Dane County Circuit Court, alleging that his civil rights were violated. On October 15, 2021, Defendants filed a notice of removal of the action from the circuit court to the United States District Court for the Western District of Wisconsin. Dkt. No. 1. On November 9, 2021, the action was transferred from the Western District to this Court. Dkt. No. 11. The Court will screen the operative complaint (Dkt. No. 1-2 at 3-15) as required by 28 U.S.C. §1915A.

### SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of

Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted).

### ALLEGATIONS OF THE COMPLAINT

Edwards asserts that beginning in April 2020 movement within his institution was limited, family visits were discontinued, and inmate transfers between institutions were halted in an effort to stop the spread of COVID-19. In July 2020, Defendant Warden Jennifer McDermott decided to partially open the institution. Inmates were allowed to go to work and school, and inmate transfers resumed. According to Edwards, five inmates were transferred to his institution in August 2020. Edwards asserts that these inmates were tested for COVID-19 and quarantined

pending the test results. While in quarantine, the inmates were allegedly in contact with other general population inmates, food service workers, unit workers, and other inmates living on the quarantine unit who had previously tested negative. Dkt. No. 1-2 at 5-7. Edwards does not explain how extensive their contact with other inmates was, nor does he allege that he had any contact with these inmates.

Edwards asserts that a few days after the inmates arrived, the institution was notified that they tested positive for COVID-19. Within days, inmates throughout the institution started complaining about having symptoms. According to Edwards, Defendant Health Services Manager Julie Ludwig did not immediately test inmates for COVID-19 but instead waited and then mass-tested all inmates in the institution on September 1, 2021. Dkt. No. 1-2 at 7.

Edwards explains that the test results came in a few days later, revealing that six of sixty-three inmates living on his unit tested positive, one of whom was Edwards' roommate. Edwards' roommate was quarantined. Edwards allegedly asked Ludwig if he also would be quarantined, but he was informed that he would not be quarantined because he had tested negative. Edwards asserts that he told Ludwig he was feeling under the weather, and she told him not to report to work until further notice. Edwards alleges that none of the roommates of those inmates who tested positive were quarantined. Dkt. No. 1-2 at 7.

According to Edwards, on September 4, 2021, he received a new cellmate who had tested negative. The following day, Edwards' symptoms allegedly worsened. He asserts that he had a high fever, body aches, a persistent cough, difficulty breathing, and bad headaches. Edwards was screened for COVID-19 and quarantined but was not re-tested. Edwards asserts that he made several requests in the following days that he be retested, but his requests were denied. Dkt. No. 1-2 at 9.

On September 11, 2020, Edwards asserts that his vitals were taken and his fever was gone. Ludwig allegedly ordered that he no longer be quarantined even though he was on quarantine for only six days instead of the recommended fourteen days. Edwards alleges that he was also told to go back to work in the main laundry room, where he dealt with the entire institution's laundry. According to Edwards, he also was allowed to move freely throughout the institution. Dkt. No. 1-2 at 9.

On September 14, 2020, Ludwig again ordered mass-testing of the inmates. Edwards again tested positive on September 16, 2020. Edwards asserts that his institution went from five positive cases to more than 800 in a matter of weeks. Dkt. No. 1-2 at 11.

## ANALYSIS

Edwards fails to state a federal claim upon which relief can be granted. In order to demonstrate a violation of the Eighth Amendment based on an official's failure to prevent harm, a prisoner must show that he was incarcerated under conditions that posed a substantial risk of serious harm and that a prison official was deliberately indifferent to the risk, meaning that she was both aware of and disregarded "an excessive risk to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 824; 837 (1994) (citations omitted). According to Edwards, McDermott was deliberately indifferent to the risk that he would contract COVID when she allowed five inmates to transfer into the institution. Edwards explains that the inmates were tested just before or after arriving at his institution and were placed in quarantine until their results were known. Edwards does not allege that the transferred inmates were exhibiting COVID symptoms at the time they were tested, transferred, or quarantined. In light of these allegations, Edwards' purported claim against McDermott fails for two reasons.

4

First, nothing suggests that McDermott knew the transferred inmates were COVID positive and therefore posed a substantial risk of infecting others. An official must know about a substantial risk of harm before she can be liable for disregarding that risk. *See Washington v. LaPorte County Sheriff's Dept.*, 306 F.3d 515, 518 (7th Cir. 2002) (a plaintiff must show an official had actual knowledge of the existence of a substantial risk). Although there always exists a *possibility* that a person is COVID positive, Edwards sets forth no facts from which the Court can reasonably infer that McDermott knew these inmates posed a *substantial* risk of infecting others. Second, according to Edwards, McDermott introduced measures to mitigate the infection risk: She ordered that the transferred inmates be tested and, pending the test results, quarantined. Even if that testing or quarantining was conducted negligently, negligence does not constitute deliberate indifference. *See Hildreth v. Butler*, 960 F.3d 420, 426 (7th Cir. 2020); *Rowe v. Buss*, No. 21-1182, 2021 WL 5232512, at *2 (7th Cir. Nov. 10, 2021) (plaintiff who alleged assistant warden had mitigated risk by introducing quarantine measures failed to state a claim).

Edwards also fails to state a claim against Ludwig, whom he asserts refused to retest him after his symptoms worsened and then released him from quarantine after only six days instead of fourteen days. "In order to succeed in a § 1983 suit, a plaintiff must establish not only that a state actor violated his constitutional rights, but also that the violation *caused* the plaintiff injury or damages." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019) (emphasis in original; citations omitted). Edwards suffered no harm from not being retested. According to him, he was immediately placed in quarantine after his symptoms worsened. Confirming with a test what was already obvious from the circumstances was unnecessary and would have gained Edwards nothing. Similarly, Ludwig releasing Edwards from quarantine early may have impacted *other* inmates, but it did not harm Edwards. Being in or out of quarantine made no difference to

Edwards' condition or infection status. Because Edwards suffered no harm from Ludwig's actions, he fails to state a claim against her.

Although courts generally permit civil plaintiffs at least one opportunity to amend their pleadings, the Court need not do so where the amendment would be futile. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015). Edwards' allegations surrounding his purported Eighth Amendment claims are thorough, so the Court finds that further amendment would be futile.

Finally, Edwards asserts common-law negligence claims; however, because the Court has concluded that he has no federal claim, the Court will relinquish supplemental jurisdiction over the negligence claims. *See* 28 U.S.C. §1367(c)(3); *Lavite v. Dunstan*, 932 F.3d 1020, 1034 (7th Cir. 2019). If Edwards wants to pursue those claims, he may do so in state court.

**IT IS THEREFORE ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1). Edwards' federal claims are dismissed with prejudice and his state law claims are dismissed without prejudice.

**IT IS FURTHER ORDERED** that Defendants' motion to stay (Dkt. No. 14) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin on November 19, 2021.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.